I'm Debra Hayes. I represent the Johnson, Ms. Johnson, and Mr. Johnston. As the record has shown, Mr. Bergman has resolved his claim. So we're only dealing with Amie Johnson and Mr. Johnston's claims at this time. Counsel, help me with my tentative read on this. I was a little concerned with whether we had jurisdiction at all because of the WMX case. It was kind of obscure whether there was leave to amend granted, whether it should have been granted, whether all we should decide is whether the judge erred in denying leave to amend, whether you're appealing on the ground that he erroneously denied leave to amend. That's my first question. Yes, I do think we are appealing on the fact that he denied leave to amend and also on the fact that he did go so far as under Twombly and ICBAC to say that it's not plausible, that there's no way that we can ever plead a plausible cause of action. And so we are at a dead end with the district court. And unless this court overrules that, there's no way for us to go. So we have jurisdiction because he denied leave to amend. Exactly. And you are appealing that. Yes. Now the next thing is my reading of this was that there's a pretty good argument that there's preemption. But if there isn't, it's hard to see a violation of state law because the prohibition on fees, it looks like it's a prohibition of lying basically, prohibiting fees that purport to be based on what the bank had to pay to somebody else, but it didn't really have to pay them to somebody else. It was just the money that it wanted. And as for the points, it looked as though that was a prohibition directed at mortgage brokers rather than the lender. What am I missing there? Well, we have to start at the very first problem with this case. In order for preemption to apply, Countrywide has to establish to the court that they're a creditor. And they failed to do that, and that can't even be done on a motion to dismiss because they have to put forth affirmative evidence that they give a million dollars a year in real estate loans. Now, they tried to wire around that and use our pleading, and they said that it can be tacitly inferred from our pleading that they do a million dollars in loans because the combined amount of loans for Johnson and Bergman were $660,000. That's not even a million dollars right there, number one. Number two, Johnson and Bergman loans were done in two different years. So they have not even come forth and affirmatively proved to the court, the district court, and any of the evidence that they fall under the definition of creditor. And that problem also ties in with the underlying causes of action in the Consumer Loan Act. Are they a mortgage broker or are they a creditor? There is no evidence in the record as to which they are. In their reply, they simply assert that they are, but they use our complaint, which doesn't address the issue, to try to prove that they've met that requirement. Well, if it's dismissed on the pleadings, using your complaint is just the way they're supposed to do it. That's all that they can look at is our complaint. And our complaint didn't state whether they're a creditor or a mortgage broker because we're not certain. We don't have the evidence. We weren't certain, didn't have the evidence about what amount of real estate loans they write per year. That evidence would have to come from them, that assertion. So let's suppose it's not preempted there. Okay, so if it's not preempted because they failed to prove that they're a creditor, there's other reasons it's not preempted in my opinion. Your complaint says that they engage in the business of originating mortgage loans. That doesn't mean that they loan money for first liens? Well, mortgage brokers can also originate first liens. The other reason that it's not preempted is because what the underlying state statutes are doing isn't really interfering with DIDMCA. DIDMCA is saying you cannot limit the amount of discount points. What the Consumer Loan Act and the ensuing WACs are saying is you can charge whatever discount points you want, but you must then give them a lower rate, interest rate for the discount points. Now where did you allege they didn't get a lower rate? With the Johnsons, that's what we allege. They paid $4,000, and on the HUD-1 statement it says this is a loan discount fee. Yes, but then you say the rate they paid was higher than the national average. Exactly. I don't get what that proves. Well, we believe that when we get the discovery, we will be able to show that the rate that they got, based on just who they were, that it was not intentionally lowered as it was charged. I know, but to say, I mean to allege, and you have to come forward and state a claim, to allege that they didn't get a rate that's lower than the national rate, I don't see where that gets you anywhere. I don't see where that gets you in the door. Well, and unfortunately this is not in the record, but they did, it was investigated by the DFI and found that they did. Well, if it's not in the record, then it doesn't matter. I don't understand what the national rate has to do with it. That's my question. Well, the national rate would include all types of people with all types of loans. So what? Suppose the banks think Alaskans are riskier borrowers than Washingtonians, so it generally charges Alaskans more than Washingtonians. I don't understand what the national average has to do with anything. Well, it takes… See, I'll give you my definition. If there's an average, some people are higher and some people are lower. Right. And you make no showing as to why these people should be lower than the average or at average, right? It's just Kleinfeld says, you know, we know nothing about their credit history or anything like that or how many times they might have defaulted before. So what's the relevance of just saying the national rate is X and this was higher? Again, the clients do know from their own investigation that they did not get a lower interest rate for the discount. Lower than what? But so what? Are they entitled to a lower rate? Well, I think there would be you… I think that what Countrywide will have done is that they will have gone through and… But there's no allegation that they're entitled to a lower rate, is there? Yeah. Well, they would have been entitled to it because that's what they paid for. They paid for a lower rate? That's correct. They paid something called a loan discount fee. That's what it's described as. A discount from what, though? A discount from… If this is the interest rate… You don't pay a discount from the national average. No, that's true. It says… That's also a meaningless phrase, isn't it? A discount rate? Maybe we all get a discount rate. You know, it's like… What's the name of that show? You know, that Lake Wobegon? You know, all the children are above average? It's meaningless, isn't it? Garrison Keillor. What we're saying is that it was represented to the Johnsons that you're going to… This would be your… X would be your interest rate. We can get you a lower interest rate if you pay this $4,000. Maybe they did get a lower interest rate. Well, it's their allegation and their investigation has led them to believe, in good faith, they did not get a lower interest rate. And it's a formulaic… Did the bank tell them you can avoid paying the $4,000? As I understood your statement, the bank said you can pay us $4,000 and we'll give you a lower rate. That implies that the bank told them you can avoid paying $4,000 and borrow your money at a higher rate, which means it's a discount. The discount for them. It doesn't matter if everybody else gets a better rate than they do. They could be paying the highest rate of any customer at the bank and still be getting a discount if what the bank was doing was, well, kind of like companies used to do where they'd say we'll sell it to you for 3% less if you pay with cash instead of a credit card. Right. So there's a formulaic approach. You come in, you have a certain credit score, and based on this credit score, this is the interest rate that you're entitled to. But they don't have to do that. A banker can do like they used to do, and some still do, just look you in the eye and say, I think you'll be a good or a bad risk and charge accordingly, or look at how much of a down payment you're making and charge accordingly. Yes, and they can charge loan points all that they want. They can put in there and just say these are the terms. Why can't they say we'll give it to you for 5.9% or if you pay us $4,000 up front, we'll give it to you for 5.7%? They can say that. It's when they don't give you the 5.5% that they violated the statute. And in the 2010 amendment to the WAC, that's a specific provision that they've added to that now. And it's specifically so obviously this is a problem that is going on in this industry. Even if everybody else is getting it for 5.2%, it would still be a discount if they knock you down from 5.7% to 5.5% for your $4,000. And I thought you said that that's what the bank actually did according to the complaint. The bank said to the Johnsons, this is the interest rate. The Johnsons are like that's a very high interest rate. We're very concerned about that. And they said interest rates had gone up, and they said if you pay the $4,000, we will discount the amount of the interest rate that you will get. And then that's not what happened at the court. May I shift gears for a second? There's another fee at Issue 2, isn't it? The one under the reg that ends at 560. That was amended to only apply to junior liens. Is that right? That's correct. In 2009 it was amended, and so then the district court judge found that it was retroactive, which is another big issue. He cites a Washington case that seems to support him. What's wrong with that? The Kazaniji case is talking about usury. And the only way that a claimant or a plaintiff has a usury cause of action is it's created by statute. There's no underlying common law cause of action. And in this situation, there are underlying causes of action that are vested in common law, that spring from the common law. And that's the difference in looking at whether or not a statute is retroactive. The other issues on retroactivity, since we have been in this appeal process, the amendment, that WAC has been amended again. And it specifically adds in you may not charge discount points and not lower the interest rate. What is the significance of that fact? That's huge because if this court upholds the district court's ruling on retroactivity, you must now send this case, remand it back to him, allow us to replete in accordance with that new statute. And he has to decide what's the impact of this new statute that specifically addresses this situation in this matter. But the other reason Kazaniji does not apply is because, first of all, unless the statute specifically says it's retroactive, that's the rule. It's not retroactive. So then you go to the next step. The next step is, is the statute ambiguous? And if the court finds the statute's ambiguous, then the court can continue to look and see, was this simply a statute that was clarifying or procedurally remedying something? The district court never found that the statute was ambiguous. Well, he's following a Washington case that he says he's obligated to follow. And, again, but that case is on usury where there is a vested right. And so going through the analysis, if the court has to find it's ambiguous or not, then the court can look at, was it just clarifying? And the court jumped over that ambiguous step and went straight to, this is clarifying. It should be retroactive. But part of the clarification test is, did the statute affect a vested right? And the reason this is where Kazaniji, in our situation, veers apart. Kazaniji was taking away a right that only was created by statute. Usury is not anything in the common law that we're protected from. It's only by statute. So if a right is created by statute and the legislature decides to wake up one day and take away that right, it can be done retroactively. When it springs from common law, it's now a substantive vested right. And in that situation, which is what we have here, a legislature cannot amend that statute and make it retroactive unless they specifically say. Claims are not statutory under the Consumer Credit Act and these regulations? Yes, those are statutory. However, we did also have breach of implied contract. We sought to plead fraudulent concealment. We also had implied good faith and fair dealing. So those would be common law causes of action. And also the Consumer Loan Act, but more specifically the CPA, the Consumer Protection Act, all it is is a codification of common law. And all the statutory claims you would agree would be controlled by Kazaniji if Kazaniji applies? I don't think so because I think the CPA is a codification of common law. Well, if it's codified, it's codified. Yes, but all that we would have to do then is plead unjust enrichment or plead the common law causes of action, and we would be entitled to pursue under that. Excuse me, Judge Clark, go ahead. I have one more question on the earlier issue. I looked through your complaint, and it looks as though the part about the discount is 4.5 and 4.6 and 4.7. And I don't see where you ever pleaded that they did not get a discount in exchange for the points. It says, countrywide cannot show that the points resulted in a reduction of the interest. And it says, alternatively, if Johnson & Johnson did receive a discount, it's commensurate with the amount of the discount fee charged them by countrywide, thus the discount fee is unearned. I can't see where it says they didn't get a discount in exchange for the points. And then that's just, frankly, inartful pleading, and we should have specifically stated it that way. There, again, there was a letter from the DFI that used the language, and we tracked that language in our complaint rather than – So you're conceding you don't actually plead that they didn't get a discount in exchange for the points. I think it can be inferred, but are those actual words in there? No, Your Honor, they're not. But I do think that it can be inferred. That's why we're saying is that we paid $4,000 and didn't get a lower fee. Thank you, Ms. Hayes. I see you've used up all your time. Good morning, Your Honors. I'm Steve Romich, and I'm appearing this morning on behalf of Countrywide Home Owns to defend in this case. Subject, of course, to the plans that Your Honors have for me, I plan to divide my time about in half between the lender fee, which is the $775 fee, and talk about both federal preemption and the retroactivity issue revolving around Kazuniji. And then I plan to spend the second seven and a half minutes of my time talking about the discount point issue. So let me first turn to the lender fee. And I think it's important to understand with respect to actually both fees, but particularly the lender fee, this is different from a lot of these kind of fee cases that go on between borrowers and creditors in one important sense. And that is it is typically alleged in these claims that the creditor hasn't disclosed the fee, that somehow going into the transaction, the borrower is unaware that this fee is going to be charged. And that is not what's going on in this complaint. What the plaintiffs have said in this complaint instead is that there is a regulation, the Section 560 that Your Honors is referring to. Section 560 prohibits administrative fees by Consumer Loan Act licensees. They say countrywide is a Consumer Loan Act licensee, and that's important, by the way, later when we get to the Mortgage Broker Practices Act regulation that Ms. Hayes is referring to. But they say it's Consumer Loan Act licensee, subject to Section 560, is therefore not allowed to charge administrative fees, and it says this $775 lender fee was, in fact, an administrative fee. Now what Judge Settle did is he said, I'm going to dismiss that claim because Section 560, that section of 560, pardon me, that version of Section 560 that prohibits these kinds of fees with respect to all loans has been repealed. It's been amended to apply only to junior liens, and therefore as respects senior liens, it's been repealed. And I can't base a cause of action on a repeal law under Kazaniji, and therefore I'm going to dismiss. But we think, frankly, analytically, the first thing that Judge Settle should have done is dismiss under the Depository Institutions Deregulation and Monetary Control Act. And people call that variously DIDMCA, DDIMAC. I'm going to call it VACT. Before we go into that, I understood Ms. Hayes to say the repeal itself was repealed. Is that true? That the repeal has been repealed? Yeah, she said there's a new law. Well, not exactly, no. In fact, actually, what happened with the new regulation absolutely reinforces our point with respect to preemption. And let me grab your brief and explain why. Because what happened is in 2000, the sequence of events is this, Your Honor, because I think it's illuminating. We have the preemption under DDIMAC or under the Act with respect to senior liens. So states can regulate these kinds of charges with respect to junior liens. In 2006, the Department of Financial Institutions promulgates a regulation that doesn't distinguish between junior and senior liens, okay? And it says you can't charge these administrative charges. There are interpretive letters from the Department of Financial Institutions that say this doesn't apply to senior liens subject to preemption under the Act. And that's an excerpt of Record 163 as an example of one of those interpretive letters. Then comes along 2008. They're going to rewrite the regulation. And somebody writes in a comment, and this is in the appendix to our brief, somebody writes in a comment and says, gee whiz, can the DFI clarify that really 560 doesn't apply to senior liens, that it applies only to junior liens? And the DFI responds in their explanation for the 2009 amendment by saying we are clarifying to make clear that it only applies to junior liens, that senior liens like this are outside the scope of Section 560. So that's the 2009 repeal upon which Judge Sutter relied. So Ms. Hayes says, well, that's been amended again in 2010. And she's right. But the interesting thing is how it's been amended. What it's been amended to say now is on non-mortgages, junior liens, and first lien mortgages by licensees who are not creditors under the Depository Institution's Deregulation and Monetary Control Act. Then it goes on to prohibit fees. So in essence, what it says is it expressly recognizes preemption and says that senior liens still are subject to the regulation, but only if those senior liens are in favor of creditors who don't get the benefit of preemption. That gets to the point that Ms. Hayes made about countrywide not being a creditor within that definition. It's a very interesting point, Your Honor, and that was going to be actually where I went next. Because as Judge Kleinfeld pointed out, we're stuck with the pleadings. Now, what do they plead on that point? Literally the very first paragraph, substantive paragraph of the amended complaint says this. This action arises from 1.1 excerpt of Record 20. Thanks. This action arises from a scheme devised and operated by defendant countrywide under which it engaged in federally related lending. Now, why is that important? Because federally related loans are the loans that are subject to the act's preemption by definition. So they concede in the very first paragraph of their complaint that we fit within that category. But even further, Your Honors, remember they had to allege federal jurisdiction in this case. And the way they allege federal jurisdiction was under the Class Action Fairness Act. And that required them to allege that there was $5 million or more in controversy. And, indeed, they did that. They alleged in paragraph 2.1 that there was more than $5 million in controversy in fees alone. And, remember, these fees are ancillary to loans. And they allege in paragraph 5.3 that there are thousands of class members in Washington alone. So when you put those together, $5 million in controversy, thousands of class members in Washington alone, the allegation of federally related loans, it is inescapable that they have alleged that countrywide is a creditor for purposes of the act. And, indeed, Your Honors, what's significant about that is when we made the first motion to dismiss, they did not contest the application of the act. Judge Settle expressly said, in his order at the time, that they did not contest it. So to the extent they had such an argument, they have waived it by not raising it below. So what about the merits of preemption? Well, it's important to understand they don't even brief the merits of preemption on this appeal, Your Honors. Because when we raised it, they, in their reply brief, said, well, we hadn't preserved it because we didn't file a cross-appeal. As I'm sure Your Honors know, we didn't need to file a cross-appeal because all we're asking the court to do is affirm the judgment on grounds other than Judge Settle reached. Rivera v. City and County of San Francisco, 316 F. 3rd 857. I can cite a number of other cases that stand for the proposition that as long as we're not trying to improve the relief that we got in the district court, we need not file a cross-appeal. On the merits, there really is very little argument, I believe, because the Act preempts state laws that purport to regulate the amount of finance charges or other charges. And when you look at the case law for both of those things, it's clear that any charge that a creditor imposes upon a borrower incident to the loan that would have to be disclosed in the annual percentage rate for truth in lending purposes is subject to preemption. It is equally clear and not contested by the plaintiffs that, indeed, these kinds of charges are exactly that. And so it is clear that federal preemption applies on the merits. Now, I want to... There are exceptions to preemption, though, right? There are exceptions to preemption if the charges do not fall within it. That's one. You know, if it doesn't fall within that category of charges that are preempted, true. It is also possible for a state to opt out of DDIMACC if it passed a law within three years of the promulgation of the statute. This Court has already held in the Brown case that that didn't happen. And there is the ability of a state to opt out with respect to discount points or similar charges by enacting a specific regulation dealing with that. And the judge found... Judge Settle found that the exceptions did apply and that preemption did not occur. He found that there was an act... Pardon me. There was a regulation dealing with discount points and that, therefore, there was no preemption with respect to discount points. With respect to the lender fee, he simply said, I'm not satisfied that's an other charge. Well, that's reviewed de novo, Your Honor, and I don't see how one can reach that conclusion because, clearly, a lender fee, by the terms of truth in lending, both the regulations and the statute, has to be included in the APR, the legislative history of the case law shows that any charge of that nature that has to be included in the APR is preempted under the Act. But the reality is Judge Settle was also right under Kazuniji, and I think it's important under Kazuniji to understand what that case really involved because I think Ms. Hayes kind of misses the point of Kazuniji. Kazuniji involved a situation where there was allegedly a usurious loan, a loan that... I should say loan extension of credit in connection with a retail purchase, that allegedly exceeded the usury rate that was in the Retail Installment Sales Act. Well, by the time the case came to court, the rate ceiling had been lifted, and what the Kazuniji court said is, well, when you amend a statute like that, that constitutes a repeal of the earlier statute, and we can't base a cause of action on a repealed statute that validates an existing transaction. And interestingly, the plaintiffs say that we made up that gloss about that validates an existing transaction, but that's not so. If you look at Kazuniji, it talks about how there are cases from across the country that reach exactly that conclusion, and that's all for us with what we've got here. Even if plaintiffs are right, even if there's no preemption, even if the Department of Financial Institutions intended to reach senior liens subject to preemption prior to 2009, the reality is that was repealed by the time it came to court, and you can't base a cause of action that validates an existing transaction like this on a repealed statute. What about the subsequent law? The 2010 law recognizes preemption, Your Honor, and it says that the only senior lien mortgages that are subject to Section 560 are those that are outside or those by creditors who are outside the reach of the Act's preemptive effect. And as we've explained before, they have in their complaint alleged the facts that show we are a creditor within the Act. So whether it's under Kazuniji, Your Honor, whether it's under federal preemption, we believe that Judge Settle reached the right conclusion in dismissing the lender fee claim. Now, what about the discount points? It seems to me that the discount points issue is most easily addressed by exactly the matters that Your Honors were discussing with Ms. Hayes, and that is the fact that the sequence of events went like this. They filed a complaint. The complaint just said, we don't think we got a reduction in our interest rate. Really nothing more than that. Judge Settle said, I don't think you've alleged enough facts to state a claim, but I'm going to give you time. So he gives them 30 days. They come back in with an amended complaint. And in the amended complaint, they're given an opportunity to beef up those facts, to show whatever that investigation that Ms. Hayes was referring to would show, and all they say is the national average was 6.7 percent, and our loan was at 7.875, period. That's it. And as Judge Teshima pointed out, the very fact of a national average means that there's some people above and there's some people below. And there's not a single fact alleged in this complaint that lends plausibility to the notion that the Johnson-Johnstons should have been entitled to an average interest rate or a below average interest rate or that the interest rate they actually received. Why shouldn't they get leave to amend so that now that they've been educated, they can try again and allege it? Here's the reality, Your Honor. They were given leave to amend. Judge Settle said you didn't say enough. We then filed a motion to dismiss. Was the discussion addressed to this point? His discussion was, I would say, generic. His discussion was you haven't alleged enough. But here's what happened then, Your Honor. They filed a first amended complaint, okay? We moved to dismiss, made exactly this argument. You did make this argument. Oh, absolutely. You never really alleged you didn't get a discount. Absolutely. Absolutely. That was the gist of it. We said this is Twombly all over again, Your Honor. This is exactly what Justice Souter had in mind when he wrote Twombly. They're trying to get in the door without giving you any sense that they really have something. They then, in response, their opposition to our motion to dismiss was really a pairing of an opposition motion to dismiss and a motion for leave to amend. Nowhere in the motion for leave to amend do they suggest they have anything other than these national averages. That is all they have. And so, Your Honor, at that point, we think that they simply lack plausibility. Now, I think it's important before I sit down to talk very briefly. I don't actually understand how this was missed. It seems like if anyone could understand it, they'd be saying you didn't allege that you didn't get a discount. A discount from what? And they'd say, well, we never got a chance to pay a higher interest rate and avoid paying the $4,000 or something like that. I don't understand how it was missed either. I mean, here's the reality, Your Honor. I think the way these transactions unfold, and I speak as somebody who just got a home loan and shopped for one, you go in and you say, what's the best rate I can get? And they say, 5.2% with two points. Sometimes you don't ask. If I don't pay the points, what's the rate? It's not the obligation of the lender to tell you, frankly. If you ask, it's the obligation of the lender to tell you. But if you don't ask, it's no obligation. And you can go right down the street and you can ask somebody else what their rate is, with or without points. The interesting thing about this complaint, Your Honor, is it tells you that they entered into the transaction to buy their home in January. They didn't get a loan until July. They didn't even apply for a loan with us until July. So they had seven months to shop rates. And if this rate was excessive, if it was in excess of the national average, they had every opportunity to get a different rate from a different lender. So we presume that they got the rate they wanted on the terms they wanted. Thank you very much, Mr. Romero. Thank you, Your Honor. Ms. Hayes, you've used up all of your time, but if you promise to keep it to a minute, we'll give you a minute in rebuttal. I will be very, very brief. On the 2010 amendment, I would really ask you to go and look at number five. And it specifically says you cannot charge a loan discount fee without lowering the interest rate on the loan. And it does not say this is limited to junior liens or creditors. It doesn't have the preemption language in there. That's a whole other section, and that's what we are relying on. As far as the Johnson & Johnson's having seven months to shop rates, they were told by their builder that they had to close with the bank that he was dealing with. So they very much felt that they were a captured party. And they were told if we can lower the interest rate if you pay this additional money. And they believe that the interest rate was not lowered. And like I said, they have their own personal research that they've done to establish that. On the interpretive letter, that's outside evidence that should not be considered by either of these courts. Also, I would point out the interpretive letters are 2002, and before this was implemented in 2006. Thank you, Ms. Hastings-Rummage. Thank you to the case. This argument is submitted.
judges: Kleinfeld, Tashima, Silverman